**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | | |
|---|---|---|---|
| **Mortgage Grader, Inc.,** | § | | |
| | § | | |
| **Plaintiff** | § | | |
| | § | | |
| **vs.** | § | **NO.** | **09-CV-319-TJW** |
| | § | | |
| **BankLoans.com LLC,** | § | | |
| **Mortgagebot, LLC** | § | | |
| **Zillow Inc.,** | § | | |
| **Amerisave Mortgage Corp.,** | § | | |
| **American Internet Mortgage Inc., and** | § | | |
| **American Heritage Capital LP d/b/a AHC** | § | | |
| **Lending,** | § | | |
| | § | | |
| **Defendants.** | § | | |
| | § | | |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
AND BRIEF IN SUPPORT**

---

**MOTION**

Defendants American Heritage Capital LP, American Internet Mortgage Inc., Amerisave Mortgage Corporation, Mortgagebot, LLC, and Zillow, Inc. move the Court pursuant to Federal Rule of Civil Procedure 12(c) and Local Rule CV-7 for judgment on the pleadings concerning their counterclaims against Mortgage Grader, Inc., which seek a declaration that United States Patent No. 7,366,694 (the "'694 patent") is invalid for failure to comply with 35 U.S.C. § 101.

The grounds for this motion, as stated fully herein, are that the pleadings are closed as to the moving Defendants, there is no genuine dispute of material fact and the Defendants are entitled to judgment as a matter of law that the '694 patent is invalid because it is not drawn to patentable subject matter.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................1

INTRODUCTION .....................................................................................................................3

BACKGROUND .......................................................................................................................4

ARGUMENT .............................................................................................................................6

I.     Whether the '694 patent is drawn to patentable subject matter under 35
       U.S.C. § 101 is a threshold issue properly decided at the pleading stage...........................6

II.    The '694 patent must meet the *Bilski* "machine or transformation test." ...........................8

III.   The claims of the '694 patent are not tied to any particular machine...............................10

       A.     A claim is not tied to a particular machine merely because it cites
              implementation on general-purpose computers. .....................................................10

       B.     The claims of the '694 patent merely recite general purpose computers. .............13

              1.     Claim 1: That the claimed method occurs by means of computers
                     networked together does not tie this claim to a particular machine..........13

              2.     Claim 2: A web page or web site is not a particular machine...................14

              3.     Claims 8 through 10 and 14: A borrower grading module is
                     not a machine. ..........................................................................................14

              4.     Claims 19 through 24: Neither a computer network nor a
                     user interface is a particular machine.......................................................15

              5.     Claims 31 through 36: Recitation of a computerized method in the
                     preamble fails to tie these claims to a particular machine. .......................16

IV.    The computer-related limitations of the '694 patent reflect only
       insignificant postsolution activity. .....................................................................................16

       A.     Data gathering, data display, and the consummation of a transaction are
              insignificant postsolution activities........................................................................17

       B.     The computer-related elements in the claims of the '694 patent involve
              only insignificant postsolution activities. ..............................................................19

CONCLUSION.....................................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899 (5th Cir. 2002) ........................ 8

*Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068 (N.D. Cal. 2009) ................................................................................................................. passim

*DealerTrack, Inc. v. Huber*, 657 F. Supp. 2d 1152 (C.D. Cal. 2009)........................ 11, 12, 13, 15

*Diamond v. Diehr*, 450 U.S. 175 (1981)................................................................... 18

*Ex Parte Cornea-Hasegan*, No. 2008-4742, 2009 WL 86725 (B.P.A.I. Jan. 13, 2009) ...................................................................................................................... 16

*Ex Parte Myr*, No. 2009-5949, 2009 WL 3006497 (B.P.A.I. Sept. 18, 2009) ............ 11

*Ex Parte Nawathe*, No. 2007-3360, 2009 WL 327520 (B.P.A.I. Feb. 9, 2009)........... 17

*Ex Parte O'Meara*, No. 2008-4382, 2009 WL 3698445 (B.P.A.I. Nov. 4, 2009) ...... 17

*Fort Props. v. Am. Master Lease*, 609 F. Supp. 2d 1052 (C.D. Cal. 2009)................. 11

*Fuzzysharp Techs., Inc. v. 3D Labs, Inc.*, No. 07-5948, 2009 WL 4899215 (N.D. Cal. Dec. 11, 2009) ............................................................................................ passim

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002)............................................................................................................... 8

*In re Abele*, 684 F.2d 902 (C.C.P.A. 1982) ............................................................. 11

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008)........................................................ passim

*In re Ferguson*, 558 F.3d 1359 (Fed. Cir. 2009)....................................................... 8

*In re Grams*, 888 F.2d 835 (Fed. Cir. 1989) ............................................... 18, 19, 20, 22

*In re Sarkar*, 588 F.2d 1330 (C.C.P.A. 1978) ......................................................... 19

*In re Schrader*, 22 F.3d 290 (Fed. Cir. 1994) .............................................. 19, 20, 22

*In re Trovato*, 42 F.3d 1376 (Fed. Cir. 1994) ............................................. 19, 20, 22

*In re Walter*, 618 F.2d 758 (C.C.P.A. 1980)............................................................ 19

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007) ................................. 8

*Merck & Co. v. Hi-Tech Pharmacal Co.*, 482 F.3d 1317 (Fed. Cir. 2007) .................. 8

*Prometheus Labs., Inc. v. May Collaborative Servs.*, 581 F.3d 1336 (Fed. Cir. 2009) ......................................................................................................................... 10

*State Street Bank & Trust Co. v. Signature Financial Group*, 149 F.3d 1368 (Fed. Cir. 1998) ................................................................................................................. 5, 9

## STATUTES

35 U.S.C. § 101 ............................................................................................................ passim

35 U.S.C. § 102 ................................................................................................................... 4

35 U.S.C. § 103 ................................................................................................................... 4

Federal Rules of Civil Procedure 12(c) ......................................................................... 1, 8

Local Rule CV-7 ............................................................................................................. 1, 6

## OTHER AUTHORITIES

2 James Wm. Moore et al., *Moore's Federal Practice* § 12.38 (3d ed. 1997) ................................ 8

Interim Guidelines for Examination of Patent Applications for Patent Subject Matter Applicability § II, Off. Gaz. Pat. & Trademark Office, Nov. 22, 2005 ......................... 6

**ISSUE PRESENTED**

A business method is drawn to patentable subject matter as required by 35 U.S.C. § 101 only if (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing. The '694 patent describes a method of brokering loans that, optionally, uses general-purpose computers. Is the '694 patent invalid for failing to meet the requirements of 35 U.S.C. § 101?

**INTRODUCTION**

The patent-in-suit, U.S. Patent No. 7,366,694, describes a method of brokering loans. The method purports to provide certain advantages to borrowers, the principal one being that prospective borrowers receive a credit grade, which they can use to negotiate for favorable loan terms from potential lenders. The brokering method purports to avoid the evil of "predatory lending," a practice of certain lenders who charge credit-impaired borrowers higher interest than warranted. Nothing in this method is new, and if this case were to proceed, the '694 patent would be invalidated as anticipated or obvious under 35 U.S.C. § 102 or 103.

But we need not get that far: the claims of the '694 patent are directed to unpatentable subject matter, and the patent is therefore invalid under 35 U.S.C. § 101. Although the purported invention is claimed as a "computer-implemented" method or system, nothing about the invention has anything to do with computers, and the specification repeatedly states that the method can be implemented using any communication medium. The "computer implementation" of the '694 patent is a classic example of "insignificant postsolution activity," which does not transform an unpatentable abstract method into a patentable invention. In other words, the '694 patent fails the "machine-or-transformation test" articulated in *In re Bilski*, 545 F.3d 943, 955 (Fed. Cir. 2008) (en banc), *cert. granted*, 129 S. Ct. 2735 (2009). The loan

brokering method of the '694 patent is unpatentable, just like *Bilski*'s method of hedging commodity risk was unpatentable.  Mortgage Grader's complaint should therefore be dismissed with prejudice because the '694 patent is invalid.

## BACKGROUND

**Procedural background.**  Mortgage Grader sued American Heritage Capital LP ("AHC"), American Internet Mortgage Inc. ("AimLoan"), Amerisave Mortgage Corporation ("Amerisave"), Mortgagebot, Zillow, Inc., and BankLoans.com LLC ("BankLoans") on October 15, 2009, alleging that each of the defendants infringed the '694 patent by operating loan-related websites.  One defendant, Bankloans, has challenged personal jurisdiction.  The other defendants timely answered denying infringement and asserting various counterclaims, including a declaration that the '694 patent is invalid under 35 U.S.C. § 101.  All defendants except for BankLoans, whose motion to dismiss for lack of personal jurisdiction is pending, now move for judgment on the pleadings on the grounds that the '694 patent is directed to unpatentable subject matter, under principles articulated in *Bilski*.  545 F.3d at 951.

**The '694 patent.**  The '694 patent, entitled "Credit/Financing Process," issued on April 29, 2008 (six months before the en banc decision of the Federal Circuit in *Bilski*).  The application was filed July 29, 2002 as a continuation-in-part of application no. 10/139,418, which ultimately claims priority to provisional application no. 60/362,314 filed March 5, 2002.  The '694 patent was thus examined while *State Street Bank & Trust Co. v. Signature Financial Group*, 149 F.3d 1368 (Fed. Cir. 1998), was the leading case on the scope of patentable subject matter.  Under *State Street*, the Patent Office tended to regard purely abstract methods as patentable so long as they produced "useful, concrete and tangible" results.  *Id.* at 1374; Interim Guidelines for Examination of Patent Applications for Patent Subject Matter Applicability § II,

Off. Gaz. Pat. & Trademark Office, Nov. 22, 2005.  *Bilski*, however, rejected the "useful, concrete and tangible result" test.  *See* 545 F.3d at 959 (noting that the inquiry under this test "is insufficient to determine whether a claim is patent-eligible under § 101").

The '694 patent describes a method of brokering loans.  As stated in the Abstract:

> A method for a borrower to obtain and/or evaluate desired
> financial services is disclosed.

(Abstract (Attachment A, at 1).)[1]  The brokering method has three primary components, as indicated in Figure 1.  First, a borrower provides personal information about his finances, his credit, and the reasons he seeks financing.  (Claim 1, lns. 37-38; col. 2, lns. 48-51; Fig. 1, Ref. No. 100.)  Second, lenders provide information on the financing they offer, including credit-qualifying criteria and relevant loan terms.  (Claim 1, lns. 29-36; col. 3, lns. 42-45; Fig. 1, Ref. No. 102.)  Third, the borrower's credit information is evaluated and a credit grade is calculated. (Claim 1, lns. 38-45; col. 4, lns. 34-38; Fig. 1, Ref. No. 104.)  The '694 patent does not disclose how the credit-grading process works, except to say that it should preferably be done by a party other than the lender, and that it should be based on objective criteria.  (Col. 4, lns. 34-65; col. 15, lns. 44-60.)  The actual credit-grading procedure is not part of the invention of the '694 patent.

The borrower's use of the system, not illustrated in Figure 1, is described in the specification (col. 4, ln. 66-col. 6, ln. 67) and diagrammed in Figure 2 at Ref. Nos. 212 and 214. Essentially, the borrower receives his credit grade and, using this information, he can shop anonymously for the most beneficial loan package offered by participating lenders.  If and when the borrower chooses, he can disclose all or part of his personal information to a lender to receive

---

[1] The '694 patent is attached to this motion and brief—Attachment A—with portions cited in this brief highlighted in accordance with Local Rule CV-7.  The '694 patent was also attached to Mortgage Grader's complaint.

a loan offer or consummate the transaction.  This supposedly gives rise to the main advantage of

the method, which is that borrowers armed with their credit grade can avoid being taken

advantage of:

> If borrowers know that they are acceptable based on commonly
> used credit-granting standards/systems/criteria (e.g., Fannie Mae,
> Freddie Mac, F.H.A., V.A., etc.) that typically offer the lowest
> rates and fees, it makes them less vulnerable to be victimized by
> predatory lenders and/or mortgage originators that charge
> unreasonably high rates and fees to a good quality borrower.
> Similarly, this process allows an applicant to evaluate an aspect of
> their finances based on accepted criteria used in the trade for the
> particular financial aspect in question, and enables the applicant to
> use the resulting information to the advantage of the applicant.

(Col. 8, lns. 5-16.)  In short, the '694 patent provides a method for borrowers to obtain

information about their credit worthiness and about the cost of loans for which they might

qualify.

Crucially, nothing about the method described in the '694 patent requires that it be

performed using a computer.  A borrower can provide personal information by a computer

connected to the internet, but also through an in-person interview, over the phone, by facsimile,

or even through the mail.  (Col. 3, lns. 1-11, 51-56; col. 16, lns. 1-5.)  The borrower can receive

the results of his credit evaluation "via the [i]nternet or via another method, such as via facsimile

or mail."  (Col. 4, lns. 57-59.)  The problem that the '694 patent purports to solve relates to the

disadvantages faced by certain borrowers when looking for financing.  The '694 patent does not

purport to solve any problem posed by implementing a loan brokering system on a computer or a

computer network.

**ARGUMENT**

**I.**      **Whether the '694 patent is drawn to patentable subject matter under 35 U.S.C.
         § 101 is a threshold issue properly decided at the pleading stage.**

At any time after the pleadings close and before trial commences, a party may move for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).[2] The Court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them. *Id.* at 313-14. The Court must view all well-pleaded facts alleged in the pleadings in the light most favorable to the non-moving party, *id.* at 312-13, but the court need not accord any weight to unwarranted inferences or unsupported conclusions of law. *Great Plains Trust Co.*, 313 F.3d at 312-13; *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1362 n.9 (Fed. Cir. 2007). Judgment on the pleadings is appropriate when, as here, the pleadings are complete, not defective, and raise only issues of law. *See Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.38 (3d ed. 1997). The '694 patent is part of the pleadings: not only is it specifically identified in the complaint, but it was attached to the complaint as Exhibit A.

Whether patent claims are drawn to patent-eligible subject matter is a threshold question of law properly resolved on a motion for judgment on the pleadings. *See In re Ferguson*, 558 F.3d 1359, 1363 (Fed. Cir. 2009), *petition for cert. filed*, 77 U.S.L.W. 3680 (June 2, 2009) (No. 08-1501); *Bilski*, 545 F.3d at 951. Claim construction is not required before resolving a § 101 invalidity challenge. *See Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1073 (N.D. Cal. 2009); *Fuzzysharp Techs., Inc. v. 3D Labs, Inc.*, No. 07-5948, 2009 WL 4899215, at *2 n.1 (N.D. Cal. Dec. 11, 2009)

For the purposes of this motion, claim construction of the '694 patent is particularly irrelevant. The claim elements relevant to this motion are those that describe general-purpose computers. The specification of the '694 patent does not describe those general-purpose

---

[2] The law of the regional circuit governs whether a motion for judgment on the pleadings should be granted. *Merck & Co. v. Hi-Tech Pharmacal Co.*, 482 F.3d 1317, 1320 (Fed. Cir. 2007).

components with any special terms, or with any special definition or description that would call

for construction by the Court.  Thus, for this motion only, in the unlikely event that a term

requires construction, the Court may give that term the reasonable construction most favorable to

Mortgage Grader.  *See Cybersource*, 620 F. Supp. 2d at 1073; *Fuzzysharp Techs.*, 2009 WL

4899215, at *2 n.1.

**II.     The '694 patent must meet the *Bilski* "machine or transformation test."**

This case is governed by *Bilski*, 545 F.3d 943.  In *Bilski*, the Federal Circuit significantly

clarified the law pertaining to the patentability of business methods.  The technical question in

*Bilski* was an issue of statutory interpretation: the meaning of the term "process" as used in 35

U.S.C. § 101.[3]  But as the court recognized, the true issue was the circumstances under which

business methods are patentable:

> The true issue before us then is whether Applicants are
> seeking to claim a fundamental principle (such as an abstract idea)
> or a mental process.  And the underlying legal question thus
> presented is what test or set of criteria governs the determination
> by the Patent and Trademark Office ("PTO") or courts as to
> whether a claim to a process is patentable under § 101 or,
> conversely is drawn to unpatentable subject matter because it
> claims only a fundamental principle.

*Id.* at 952.  Although no per se rule precludes the patenting of business methods, the Federal

Circuit reaffirmed the core principle that "laws of nature, natural phenomena, and abstract ideas"

are not patentable.  *Id.* at 960.  Courts—and the PTO—had deviated from this core principle in

applying *State Street* and other tests for patentable subject matter.  *See id.* at 958-60 (rejecting

various tests applied in district courts and by the PTO).  Accordingly, the *Bilski* court

rearticulated the test to determine whether a process is patentable.  After *Bilski*, a business

---

[3] 35 U.S.C. § 101 states: "Whoever invents or discovers any new and useful process, machine,
manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent
therefor, subject to the conditions and requirements of this title."

method is patentable only if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.* at 954.  A business method that fails this two-part test—the "machine-or-transformation test"—is an unpatentable "abstract idea."

*Bilski* also makes clear that the machine or transformation test cannot be satisfied by artful claim drafting when the substance of the invention is not patentable.  Thus, *Bilski* also articulates two "corollaries" to the test, which ensure that the public's use of laws of nature and abstract ideas is not impeded by artfully drafted patent claims.  First, "the use of a specific machine or transformation of an article must impose meaningful limits on the claim's scope to impart patent-eligibility."  *Bilski*, 545 F.3d at 961; *accord Prometheus Labs., Inc. v. May Collaborative Servs.*, 581 F.3d 1336, 1342 (Fed. Cir. 2009), *petition for cert. filed*, 78 U.S.L.W. 3254 (U.S. Oct. 22, 2009) (No. 09-490).  The second corollary—one particularly significant in this case—is that "the involvement of the machine or transformation in the claimed process must not merely be insignificant extra-solution activity."  *Bilski*, 545 F.3d at 961-62; *Prometheus Labs.*, 581 F.3d at 1342-43.  In other words, if the underlying invention does not satisfy the machine or transformation test, the superficial invocation of implementation on a computer or a network will not make the method patentable.

The '694 patent is directed to a "process," as is clear from the title, "Credit/Financing Process," and the Abstract, which describes the invention as a "method for a borrower to obtain and/or evaluate financing."  The invention is claimed as a "computer-implemented" system or method.  Without the recitation of "computer implementation," the '694 patent would undeniably be an unpatentable abstract idea, just like the commodity-hedging method in *Bilski*.  The issue before this Court is thus clear: do the computer-related limitations in the claims of the '694

patent render those claims patentable?

## III.   The claims of the '694 patent are not tied to any particular machine.

The claims of the '694 patent, as claims to a process, must be tied to a particular machine to ensure that they do not pre-empt all uses of an abstract idea.[4]   *Bilski*, 545 F.3d at 954.   But the '694 patent's general steps and passing references to generic computer hardware fail to tie the claims of the '694 patent to a particular machine.

### A.   A claim is not tied to a particular machine merely because it cites implementation on general-purpose computers.

Courts following *Bilski* have applied the machine prong of the test to process claims that include computer-related limitations.   We examine three of those cases here, because the claims at issue in them are very similar to the claims at issue in the case at hand: *DealerTrack, Inc. v. Huber*, 657 F. Supp. 2d 1152 (C.D. Cal. 2009); *Fuzzysharp Techs.*, 2009 WL 4899215; and *CyberSource Corp.*, 620 F. Supp. 2d 1068.

The first case, *DealerTrack*, involved a patent on a computerized credit application processing system, an alleged invention quite similar to the one at issue in the patent-in-suit.

---

[4] The '694 patent claims its method as "computer implemented," and thus the patentee does not attempt to satisfy the transformation prong of the test.   Nor could he.   The steps of the '694 patent's method cannot satisfy the transformation prong of the test because no physical object or representation of a physical object is transformed.   Instead, the '694 patent concerns the manipulation of abstract data and financial relationships, neither of which embodies data with a physical counterpart.   As the Federal Circuit put it: "Purported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the [machine or transformation] test because they are not physical objects or substances, and they are not representative of physical objects or substances." *Bilski*, 545 F.3d at 963.

Courts, as well as the Board of Patent Appeals and Interferences, have already held that the following do not satisfy the transformation test: Comparison and manipulation of intangible data, including manipulating the relationships between commodity market participants (*Bilski*, 545 F.3d at 964); graphically displaying variances of data from average values (*id.* at 962 (citing *In re Abele*, 684 F.2d 902, 909 (C.C.P.A. 1982)); manipulating credit card numbers and internet protocol addresses (*Cybersource*, 620 F. Supp. 2d at 1073-1076); and calculating an appraisal value for property (*Ex Parte Myr*, No. 2009-5949, 2009 WL 3006497, at *10 (B.P.A.I. Sept. 18, 2009)).   Further, the display of legal rights or other abstractions, even in a printed document, cannot satisfy the transformation prong of the test.   *See Fort Props. v. Am. Master Lease*, 609 F. Supp. 2d 1052, 1056 (C.D. Cal. 2009).

Thus *DealerTrack* analyzes the same sort of § 101 deficiencies as those presented by the '694 patent. The *DealerTrack* patent, U.S. Patent No. 7,181,427, titled "Automated Credit Application System," is directed to a "'computer based credit application processing system [that] provides a graphical user interface, automatic software update downloading, lender to lender routing of credit applications, and integration with in-house finance and insurance systems and third party data entry facilities, among other features.'" *DealerTrack, Inc.*, 657 F. Supp. 2d at 1153 (quoting the patent Abstract). The *DealerTrack* patent claimed a "computer aided method" comprising the steps of: "receiving credit application data from a remote *application entry and display device*; selectively forwarding the credit application data to remote funding *source terminal devices* …." *DealerTrack*, 657 F. Supp. 2d at 1153. Claim 2 states that the "remote application entry and display device includes a data entry terminal for manual entry of the credit application data." U.S. Patent No. 7,181,427 (filed Sept. 3, 1997). Claim 3 adds the step of "aggregating data" and "providing the dealer with a consolidated report using the aggregated data." *DealerTrack*, 657 F. Supp. 2d at 1153.

The *DealerTrack* court recognized that even though the invention was claimed as implemented on a computer, it was nevertheless unpatentable. The court found that the claims were tied to a "central processor 'consisting of a specially programmed computer hardware and database'" and that the court had construed the claim terms, "remote application entry and display device" and "terminal device" to mean, in part, "any device, e.g., personal computer or dumb terminal …." *Id.* at 1155-56. Despite the inclusion of machine elements in the patent, the court concluded that the claims were not drawn to patentable subject matter:

> The Court finds that none of these devices constitutes a "particular machine" within the meaning of *Bilski*. The '427 Patent does not specify precisely how the computer hardware and database are "specially programmed," and the claimed central processor is

> nothing more than a general purpose computer that has been programmed in some unspecified manner.  Under *Bilski* and the recent decisions interpreting it, the central processor in this case cannot constitute a "particular machine."  Further, this Court's claim construction order defined both the "remote application entry and data device" and "remote funding source terminal device" to include "any device," such as a personal computer or dumb terminal, and these devices clearly cannot constitute particular machines.

*Id.* at 1156.  General purpose computers and common components such as databases and networks are not particular machines capable of satisfying the machine or transformation test.  *Id.*

The second case, *Fuzzysharp*, likewise holds that general-purpose computers and their components do not satisfy the machine prong of the machine or transformation test.  In *Fuzzysharp*, the patents concerned methods for improving computer three-dimensional graphics and included as claim elements a "computer" and "computer storage."  2009 WL 4899215, at *1-2.  Further, the parties agreed that one of the claim terms meant a "computer screen."  *Id.* at *4.  Despite these references to machines, the court concluded that the patents were not tied to a particular machine and did not satisfy the *Bilski* machine or transformation test:

> The salient question is not whether the claims are tied to *a* computer.  Rather, as *Bilski*, makes clear, the question is whether the claims are "tied to a *particular machine*."  Aside from the passing reference to "computer storage," neither of the disputed claims in the '047 Patent make any reference to any machine or apparatus.  As for the '679 Patent, the claims are not tied to a particular computer, but simply make a generally [sic] reference to "a" computer.  Courts applying *Bilski* have concluded that the mere recitation of "computer" or reference to using a computer in a patent claim is insufficient to tie a patent claim *to a particular machine*.

*Id.* (citations omitted).  Thus, claims that reference general purpose computers and their components are not drawn to patentable subject matter because they are not tied to a particular machine.  *Id.* at *5.

In the third case, *CyberSource Corp.*, the court also concluded that method and system claims performed over the internet by "processors of a computer system" failed to tie the claims to a particular machine.  620 F. Supp. 2d at 1070-71.  The court acknowledged that the internet "is a network of millions of individual machines" and that the patent claims are implemented through "general and special purpose computers, routers, hubs, switches and other specialized hardware comprising the internet."  *Id.* at 1076-77 (internal punctuation omitted).  Nevertheless, the court held that the patent was not tied to a particular machine because the internet exists "despite the addition or subtraction of any particular piece of hardware."  *Id.* at 1077.

> **B.** **The claims of the '694 patent merely recite general purpose computers.**

None of the claims of the '694 patent do anything more than recite the use of a general purpose computer to implement the loan brokering method.  Reviewing each computer-related limitation shows that the '694 patent does not include a single claim that is tied to a particular machine.[5]

> **1.** **Claim 1: That the claimed method occurs by means of computers networked together does not tie this claim to a particular machine.**

Claim 1 recites four computer-related limitations: (a) a computer system and network, (b) a first interface to input data into the computer system, (c) a second interface to input data into the computer system, and (d) a database.  There is no discussion of how these standard computer system components are specially programmed such that they might constitute a "particular machine."  The discussion of the database in the specification is particularly telling in this regard because, despite its verbosity, it essentially says *nothing* about how the database actually works:

---

[5] Dependent claims 3-7, 11, 12, 13, 15, 16, 17, 18, 25-30, and 37 do not include any computer-related limitation that could plausibly tie these claims to a machine beyond those limitations present in independent claim 1.  For purposes of this analysis, therefore, these claims are not separately addressed.

> The database 406 preferably contains a data structure comprising a
> searchable database of information provided or compiled in
> response to one or more of blocks 100, 102, 302 and 220.

(Col. 15, lns. 23-26.)  In other words, the database should, preferably, work like a database.

The references to computers, "computer-implemented systems," and first and second interfaces also lack particularity.  For example, in the two places where the specification mentions the second interface, the only information provided is that the interface preferably uses web pages (col. 15, lns. 3-5; col. 16, ln. 67–col. 17, ln. 3), but that it could also operate over an interactive television system, a telephone, or any other way of transmitting information.  (Col. 17, lns. 4-12.)  And the only information the specification provides about the first interface is that it may be a web site.  (Col. 16, lns. 65-66.)  In sum, the computer-related references in claim 1 merely invoke the internet as a way to communicate information between borrowers, lenders, and a third party that functions like a mortgage broker.  As *DealerTrack* and *CyberSource* show, however, references to the internet and computer-related limitations like those in claim 1 of the '694 patent are components of any standard computer system that fail to tie claim 1 to any particular machine.

### 2.     Claim 2: A web page or web site is not a particular machine.

Claim 2 of the '694 patent adds a limitation to the second interface, requiring that it comprise "a set of web pages of a web site."  But reference to a web page or web site merely invokes the internet and does not tie claim 2 to any particular machine.  *See Cybersource*, 620 F. Supp. 2d at 1076-77 (recognizing that the internet is an abstraction, not a machine).

### 3.     Claims 8 through 10 and 14: A borrower grading module is not a machine.

Claims 8 through 10 and 14 depend from claim 1 and relate to the "borrower grading module."  These claims, which are directed to determining the result of an unspecified

calculation, add limitations based on the information on which the credit grade is "calculated" or "generated." Despite the reference to "calculation" and the object-like connotation of the term "module," the borrower grading module is not a machine at all. Rather, the specification describes the module as the portion of the system that somehow analyzes the borrower's information and uses the analysis to search across the lender-supplied information. (Col. 15, lns. 44-52.) But the patent does not describe how this is accomplished: "The exact nature of the information analyzed will vary with the nature of the financial transaction involved." (Col. 15, lns. 56-58.) A bare algorithm is not patentable, and the '694 patent does not even provide that. The borrower grading module is simply the portion of the method that produces the credit grade—through an unspecified process.

Nor does the '694 patent tie the borrower grading module to a particular machine. At most, the patent states the borrower grading module may be executed by a server, a computer, or an information processor—all of which are (construed most favorable to Mortgage Grader) general-purpose computer components, not particular machines. *See Ex Parte Cornea-Hasegan*, No. 2008-4742, 2009 WL 86725, at *5 (B.P.A.I. Jan. 13, 2009) ("The recitation of a 'processor' performing various functions fails to impose any meaningful limits on the claim's scope. The recitation of a 'processor' performing various functions is nothing more than a general purpose computer that has been programmed in an unspecified manner ...."). By describing the borrower grading module so abstractly, the presence of this term in claims 8 through 10 and 14 does not impose any meaningful limit on these four claims and fails to tie them to any particular machine.

> **4.      Claims 19 through 24: Neither a computer network nor a user interface is a particular machine.**

Independent claim 19 is for a "computer-implemented method," and it is substantially similar to claim 1 insofar as the computer-related limitations are concerned. The only arguably

different computer-related element in claim 19 and those that depend from it (20-24) is that the method is implemented over a "computer network."  The invocation of a "computer network" does not tie this claim to a particular machine.  *CyberSource*, 620 F. Supp. 2d at 1077.

> **5.    Claims 31 through 36: Recitation of a computerized method in the preamble fails to tie these claims to a particular machine.**

Independent claim 31 is for a "computerized method of reducing discriminatory lending." Like claim 19, it is also substantially similar to claim 1 insofar as the computer-related limitations are concerned.  The description of the method as "computerized" does nothing to tie claim 31 and those that depend from it (32-36) to a particular machine.  *See Fuzzysharp Techs.*, 2009 WL 4899215, at *4 ("mere recitation of 'computer' or reference to using a computer in a patent claim is insufficient to tie a patent claim *to a particular machine*"); *see also Ex Parte O'Meara*, No. 2008-4382, 2009 WL 3698445, at *8 (B.P.A.I. Nov. 4, 2009) ("[W]e consider the addition of a nominal recitation of a computer in the preamble of the claim 1 to be a token recitation.  To elevate such a token recitation of a computer to that of a 'particular' machine that would satisfy the machine prong of the *Bilski* machine-or-transformation test would be to permit clever drafting of process subject matter … and to exalt form over substance"); *Ex Parte Nawathe*, No. 2007-3360, 2009 WL 327520, at *4 (B.P.A.I. Feb. 9, 2009) (a claim preamble that recites a "computerized method" is not sufficient to tie the method to a particular machine).

Claim 31 and the claims that depend from it therefore fail the machine or transformation test and are invalid under 35 U.S.C. § 101.

## IV.    The computer-related limitations of the '694 patent reflect only insignificant postsolution activity.

The analysis could end here.  Following the guidance of other courts in the application of *Bilski*'s machine or transformation test, the Court should conclude that the simple recitation of computer "interfaces," "databases" and a "computer network" do not tie the claims of the '694

patent to a particular computer.  Accordingly, all the claims of the '694 patent are invalid under

section 101.  But *Bilski* provides yet another analytical approach that shows the invalidity of the

'694 patent under 35 U.S.C. § 101.

To guide the application of the machine or transformation test, the *Bilski* court identified

what it termed a "corollary" to that test:  "insignificant postsolution activity will not transform an

unpatentable principle into a patentable process."  *Bilski*, 545 F.3d at 957 (quoting *Diamond v.

Diehr*, 450 U.S. 175, 191-92 (1981)).  This corollary is necessary to ensure that section 101

remains a meaningful threshold for patentability even when the process calls for steps to be

performed on a computer.  *See Cyberspace Corp.*, 620 F. Supp. 2d at 1077.  If a claim could be

drawn to patentable subject matter simply by tacking on some extra-solution machine process,

"any 'competent draftsman could attach some form of [extra]-solution activity to almost any

mathematical formula,' or, for that matter, mental process."  *Id.* (quoting *Bilski*, 545 F.3d at 957).

In other words, the *Bilski* court provided another way of applying the machine or

transformation test to patent claims—such as those at issue here—in which certain steps are to be

performed on a computer.  Applying this corollary, this Court must ask whether the role of the

computer in the claims of the '694 patent is merely "insignificant postsolution activity."

> **A.      Data gathering, data display, and the consummation of a transaction are
> insignificant postsolution activities.**

The Federal Circuit has already held that machine-based activities like those recited in

the '694 patent are insignificant postsolution activities that fail to turn an unpatentable abstract

idea into a patentable invention.

It is well-established that "adding a data-gathering step to an algorithm is insufficient to

convert that algorithm into a patent-eligible process."  *Bilski*, 545 F.3d at 963 (citing *In re

Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989)).  The patent application in *Grams* claimed a method

to test a complex system (i.e., a person) and detect the cause of any abnormality in the system. 888 F.2d at 836.  The claimed process consisted of five steps.  *Id.* at 836-37.  The first step entailed the collection of data through laboratory tests, and the second through fifth steps consisted of analyzing the obtained data.  *Id.* at 837.  The court held that the gathering of data represented extra-solution activity and that the patent application essentially claimed a mathematical algorithm because "[n]o mathematical equation can be used, as a practical matter, without establishing and substituting values for the variables expressed therein."  *Id.* at 839 (quoting *In re Sarkar*, 588 F.2d 1330, 1335 (C.C.P.A. 1978).  That is, data-gathering steps— even if novel and non-obvious—cannot make an otherwise nonpatentable claim patentable, even if the claim requires use of a computer.  *Id.* at 840, 841.

 The step of recording data as part of a process also cannot impart patent eligibility. *Bilski*, 545 F.3d at 957 n.14 (citing *In re Schrader*, 22 F.3d 290 (Fed. Cir. 1994)).  In *Schrader*, the patent claimed a method for auctioning multiple items so as to maximize the total price for the items.  22 F.3d at 291.  One step in the claimed invention required entering all submitted bids into a record to facilitate a comparison of the bids.  *Id.* at 292, 294.  The court held that this step of entering data in a record was implicit to a comparison of bids and that it represented extra-solution activity that could not impart patentability.  *Id.* at 294.  Similarly, the post-solution display of results—a form of data recordation—cannot impart patent eligibility.  *In re Trovato*, 42 F.3d 1376, 1380 (Fed. Cir. 1994), *withdrawn on other grounds by* 60 F.3d 807 (Fed. Cir. 1995) (citing *In re Walter*, 618 F.2d 758, 770 (C.C.P.A. 1980)).  Recording and displaying data, therefore, does not make a claim patent eligible.  *Bilski*, 545 F.3d at 957 n.14 (summarizing *Schrader*).

 Finally, a patent step that requires the consummation of a transaction fails to impart

patent eligibility.  *Bilski*, 545 F.3d at 965.  In *Bilski*, the patent claimed a method for hedging risk

in the sale and purchase of commodities, with the final step in the method being the "initiati[on

of] a series of transactions" between the buyer, seller, and intermediary.  *Id.* at 965, 949.  The

transactions themselves reflected the byproduct of the inventive principle and thus were held to

be post-solution activity.  *See id.* at 965.

**B.      The computer-related elements in the claims of the '694 patent involve only
         insignificant postsolution activities.**

The claims of the '694 patent are patent-eligible only if the computer-related elements are

more than insignificant postsolution activity.  But, just as in *Grams*, *Schrader*, and *Trovato*, the

'694 patent relies for patentability on claim elements that merely facilitate the gathering,

recording, and displaying of data.

The essential components of the invention in the '694 patent are collecting information

and calculating a credit grading to match borrowers with potential lenders.  The invention is for a

method of evaluating potential commercial relationships, combined with preliminary data

gathering and post-solution display of the results of the evaluation.  The relevant excerpt from

the '694 patent's brief summary of the invention shows that data gathering and data display are

the only roles the computer elements could play:

> Personal information is obtained and recorded regarding the
> reasons that the borrower wants to obtain the financing.  Loan
> evaluation information is obtained and recorded.  The loan
> evaluation information is preferably based on, or the same as the
> criteria used by at least one established financial institution that
> may provide financing to the borrower.  A credit grading is
> determined for the borrower based on pre-established and objective
> criteria, the personal information and the loan evaluation
> information.

(Col. 1, lns. 53-62; see also Figs. 1 and 2A.)

Parsing the claims into individual elements confirms that the role of the computer is

limited to gathering and displaying data.  As shown in the following table, each of the computer-related limitations in claim 1 of the '694 patent falls within one of the three categories of extra-solution activity recognized in *Bilski*.

| Claim Language | Function |
|---|---|
| a database that stores loan package data specifying loan packages for home loans offered by the lenders, the loan package data specifying, for each of the loan packages, at least a loan type, an interest rate, and a required borrower credit grading; and | Recording of data |
| a computer system that provides: a first interface that allows the lenders to securely upload at least some of the loan package data for their respective loan packages to the database over a computer network; and | Gathering of data |
| a second interface that prompts a borrower to enter personal loan evaluation information, and | Gathering of data |
| invokes, on a computer, a borrower grading module which uses at least the entered personal loan evaluation information to calculate a credit grading for the borrower, said credit grading being distinct from a credit score of the borrower, and being based on underwriting criteria used by at least some of said lenders; | Unspecified calculation |
| wherein the second interface provides functionality for the borrower to search the database to identify a set of loan packages for which the borrower qualifies based on the credit grading, and to compare the loan packages within the set, including loan type and interest rate, while remaining anonymous to each of the lenders and without having to post a request to any of the lenders, said second interface configured to display to the borrower an indication of a total cost of each loan package in the set, said total cost including costs of closing services not provided by corresponding lenders; and | Recording and displaying of data |
| wherein the computer-implemented system further enables the borrower to selectively expose at least the personal loan evaluation information to a lender | Post-solution consummation of the transaction |

| corresponding to a selected loan package. | |

Like the claims in *Grams*, *Schrader*, and *Bilski*, the claims of the '694 patent are not drawn to patentable subject matter. Just as the physical steps to collect data in *Grams* were extra-solution activity, the recitations of a computer-implemented method and a system to collect data from lenders and borrowers use machines to provide data for the variables of the credit-grading algorithm. Just as the recording of data in *Schrader* and *Trovato* were extra-solution activity, the use of computers and computer networks to store data from lenders and borrowers in a database and to display that data on an interface (which is not limited to a machine) merely facilitates application of the algorithm and matches the borrower to potential loans. Finally, just as the last step in the *Bilski* claims required initiation of the transactions, the last step in claim 1 of the '694 patent provides for transfer of information from the borrower to the lender. This last step is equivalent to the initiation of the hedging transactions in *Bilski*.

## CONCLUSION

The '694 patent describes a method of brokering loans. Although the method is claimed as implemented on a computer, the problem the invention purports to solve has nothing whatsoever to do with computers. The computer-related claim limits are merely insignificant postsolution activities, included only in an attempt to bring the patent within the ambit of patentable subject matter. But this is merely an attempt at artful claim drafting, which *Bilski* makes clear is not enough to satisfy the requirements of 35 U.S.C. § 101. The '694 patent, stripped of the attempt at artful drafting, is merely an unpatentable abstract idea.

For the foregoing reasons, the motion for judgment on the pleadings by Mortgagebot, AimLoan, Amerisave, AHC, and Zillow should be granted.

Dated this 23rd day of March, 2010                    Respectfully submitted,


      */s/ James D. Peterson*
_____

Blake A. Bailey, Texas Bar No. 01514700
CANTEY & HANGER LLP
Southlake Town Square
181 Grand Avenue, Suite222
Southlake, Texas 76092-7629
Phone: (817) 877-2898
Fax: (817) 878-6050


Brian G. Gilpin, Wis. Bar No. 1029504
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI 53202
Phone: (414) 273-3500
Fax: (414) 273-5198
bgilpin@gklaw.com

James D. Peterson, Wis. Bar No. 1022819
Bryan J. Cahill, Wis. Bar No. 1055439
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI  53701-2719
Phone: (608) 257-3911
Fax: (608) 257-0609
jpeterson@gklaw.com
bcahill@gklaw.com


Attorneys for Defendants,
Mortgagebot, LLC and
American Internet Mortgage Inc.

Dated this 23rd day of March, 2010                Respectfully submitted,


/s/ John R. Emerson
_____

David H. Harper, Texas Bar No. 09025540
John R. Emerson, Texas Bar No. 24002053
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: (214) 651-5000
Fax: (214) 651-5940
david.harper@haynesboone.com
russ.emerson@haynesboone.com


Attorneys for Defendant,
Amerisave Mortgage Corp.

Dated this 23rd day of March, 2010          Respectfully submitted,


          /s/ John R. Emerson
          _____

          David H. Harper, Texas Bar No. 09025540
          John R. Emerson, Texas Bar No. 24002053
          HAYNES AND BOONE, LLP
          2323 Victory Avenue, Suite 700
          Dallas, Texas 75219
          Phone: (214) 651-5000
          Fax: (214) 651-5940
          david.harper@haynesboone.com
          russ.emerson@haynesboone.com


          John J. Barnhardt, III
          Rebecca A. Brown
          SUMMA, ADDITON & ASHE, P.A.
          11610 North Community House Road
          Charlotte, North Carolina 28277-2199
          Phone: (704) 945-6707
          Fax: (704) 945-6735
          jbarnhardt@summalaw.com
          rbrown@summalaw.com

          Attorneys for Defendant,
          American Heritage Capital LP d/b/a
          AHC Lending

Dated this 23rd day of March, 2010                Respectfully submitted,


_/s/ John H. McDowell, Jr._

John H. McDowell, Jr.,
Texas Bar No. 01514700
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201
Phone: (214) 939-550
Fax: (214) 939-5849
john.mcdowell@klgates.com


David T. McDonald, Wash. Bar No. 5260
Cristofer I. Leffler, Wash. Bar. No. 35020
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Phone: (206) 370-6745
Fax: (206) 370-6354
david.mcdonald@klgates.com
cristofer.leffler@klgates.com


Attorneys for Defendant,
Zillow, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with true and correct copies of the following documents via the Court's CM/ECF system per Local Rule CV – 5(a)(3) on March 23, 2010:

- Defendants' Motion for Judgment on the Pleadings and Brief In Support

- [Proposed] Order Granting Defendants' Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)


*/s/ James D. Peterson*
James D. Peterson


4588014_5